# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN COLEMAN, <br><br> Plaintiff, <br><br> v. <br><br> JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security, <br><br> Defendant. | Civil Action No. 13-cv-1307 (BAH) <br><br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, John Coleman, an employee within the Department of Homeland Security ("DHS"), filed this action against defendant Janet Napolitano, in her official capacity as Secretary of the DHS, to challenge, as violative of his constitutional due process rights, his reassignment between components of DHS, even though the reassignment did not result in any reduction in his grade or pay. Pending before the Court is the defendant's Motion to Dismiss, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively. Def.'s Mot. to Dismiss at 1, ECF No. 9. For the reasons set out below, the defendant's motion to dismiss is granted.

I.  BACKGROUND

The undisputed facts in this case, as set forth in the Complaint, may be briefly summarized as follows: In 2007, the plaintiff was a GS-118-13 Criminal Investigator within Homeland Security Investigations ("HSI"), which is the largest investigative branch of DHS. Compl. ¶¶ 1, 2. Effective February 18, 2007, the plaintiff received a temporary promotion to a

1

GS-1811-14 position within another DHS department called the Office of Professional Responsibility ("OPR"), "which is tasked with investigating allegations of employee misconduct; overseeing detention functions; reviewing HSI programs and offices; and personnel security, including background investigations and security clearance adjudications." *Id.* ¶¶ 1, 4, 5. The advertisement made clear that the position was "a TEMPORARY ASSIGNMENT" and may be accompanied by "a TEMPORARY PROMOTION not to exceed three (3) years." *Id.* ¶ 3 (capitalization in original). The advertisement further stated that the temporary "assignment may be terminated any time depending on the needs of the service" and that "[u]pon completion of assignment, selectee(s) will be returned to position held prior to selection." *Id.*

The following year, on August 5, 2008, the plaintiff received a memorandum ("2008 Memorandum") from OPR's deputy director, informing him that his permanent position of record as GS-1811-13 Criminal Investigator in HIS "will be reassigned from [HSI] to [OPR]." *See* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), Exhibit A ("2008 Memorandum"), at 1, ECF No. 12-1. The 2008 Memorandum also indicated that: "[t]he effective date of this reassignment action will coincide with the effective date of your current temporary assignment with OPR, so that your temporary promotion will not be impacted and to avoid pay interruptions." *Id.* The document explicitly stated that the plaintiff was "still subject to the conditions of employment as stated in the vacancy announcement [LAG-OPR-126852-RT-321] from which you were selected for your current temporary assignment." *Id.*; *see* Compl. ¶¶ 3-4

When the plaintiff's position with OPR at a GS-14 level was set to expire, the DHS extended the position for an additional year twice—once in 2010 and then again in 2011. Compl. ¶¶ 7-8. On February 12, 2012, the plaintiff's temporary position at a GS-14 level expired, and was again temporarily extended from November 2012 until March 2013, when he

2

was scheduled to return to his GS-1811-13 position. *Id.* ¶ 10. Before the expiration of his temporary GS-14 position in OPR expired, the plaintiff's GS-1811-13 position was reassigned from OPR back to HSI on January13, 2013. *Id.* ¶¶ 9, 11.[1]

Shortly thereafter, the plaintiff filed this action claiming that his transfer or reassignment from OPR back to his original position in HSI was an "arbitrary and capricious" action that violated his due process rights. *Id.* ¶ 12-13. The plaintiff seeks equitable relief directing DHS to reassign his permanent position from HSI to OPR. *See id.*, Prayer of Relief. The defendant's motion for dismissal is now ripe for consideration.

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction Under Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* ––U.S. ––, 133 S. Ct. 1059 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

---

[1] The plaintiff makes clear that only the 2013 reassignment of his position to HSI, not the change in job grade that occurred when the plaintiff moved from his temporary promotion to his permanent position of record, is at issue in this case, explaining that the "temporary promotion to a GS-1811-14 position is not an issue in this case. The narrow issue is the propriety of his reassignment from the OPR position back to the HSI Office of Investigations position." *See* Pl.'s Opp'n at 2 n. 1.

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject matter jurisdiction, the court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

### B. Failure to State a Claim Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

4

*Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original). The Supreme Court has stated "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

The defendant contends that the Complaint must be dismissed on two separate bases: First, the defendant argues that the Court lacks subject matter jurisdiction to hear this matter because the Civil Service Reform Act ("CSRA") authorizes the plaintiff to challenge an adverse personnel action only through a hearing before the Merit Systems Protection Board ("MSPB") and subsequent appeal to the Federal Circuit. *See* Def.'s Mem. Supp. of Mot. to Dismiss ("Def.'s Mem.") at 3, ECF 9. Second, the defendant posits that the Complaint must be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 6-10. Each of these arguments is addressed below.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

According to the defendant, this Court lacks subject matter jurisdiction to hear the plaintiff's constitutional due process claim because "[t]he CSRA 'established a comprehensive system for reviewing personnel action taken against federal employees.'" Def.'s Mem. at 3 (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)).[2] Under the CSRA, the plaintiff

---

[2] The defendant also correctly argues that any claim asserted by the plaintiff under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), is precluded by the CSRA. Def.'s Mem. at 3-4; s*ee Grosdidier v., Broad Chairman. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("As our Court has emphasized, the CSRA is comprehensive and exclusive. Federal employees may not circumvent the [CSRA] requirements and limitations by resorting to the catchall APA to challenge agency employment actions."); *see also Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 175 (D.C. Cir. 2013). The plaintiff does not contest this point and clarifies in his

"has the right to a hearing before the [MSPB], and if dissatisfied by the MSPB's decision, the employee is entitled to judicial review in the Federal Circuit." Def.'s Mem. at 3. Both parties agree that "[o]nly certain personnel actions, described as adverse actions, are subject to review under CSRA," *id.*, and that "a reassignment, such as the reassignment at issue here, without loss of rank or pay is not an adverse action" entitled to administrative review. Pl.'s Opp'n at 5; *see* Def.;s Mem. at 3.³ Nevertheless, the defendant insists that the Court lacks jurisdiction to determine whether the plaintiff's reassignment from OPR to HSI "violated Plaintiff's due process rights," Compl. ¶12, because the CSRA is the "exclusive" system for challenging personnel actions taken against federal employees and "applies to constitutional challenges to federal personnel decisions just as much as to non-constitutional challenges." Def.'s Mem. at 5. If the defendant's position is correct, and this Court lacks subject matter jurisdiction, then no forum exists for review of the plaintiff's constitutional claim.

The Supreme Court recently recognized that such a case could arise, where a finding of lack of subject matter jurisdiction, based on the CSRA's comprehensive system, could entirely preclude review of a constitutional claim. In *Elgin*, the Supreme Court concluded that the district court lacked subject matter jurisdiction to hear a constitutional challenge to a federal statute because the "CSRA grant[ed] the MSPB and the Federal Circuit jurisdiction over petitioners' appeal because they [were] covered employees challenging a covered adverse employment action." *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2139 (2012). The fact that the "petitioners' constitutional claims [could] receive meaningful review within the CSRA

---

opposition that he is only asserting a constitutional due process claim. *See* Pl.'s Mem. at 5 ("[i]n the absence of just cause for the reassignment, the arbitrary and capricious adverse action violates Plaintiff's due process rights.").

³ "Under the Civil Service Reform Act of 1987 (CSRA), 5 U.S.C. § 1101 *et seq.*, certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2130 (2012). The parties do not contest that the plaintiff's reassignment is not one of the specified adverse employment actions subject to administrative or judicial review.

scheme" was essential to the Court's holding. *Id.* Indeed, the Court explicitly stated that if a finding of lack of jurisdiction would entirely foreclose review of the petitioners' constitutional claim, then under the precedent, in *Webster v. Doe*, 486 U.S. 592, 603 (1988), a "heightened showing" of Congressional intent to preclude review would be required. *See id.* at 2132 ("where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear"). The Court in *Elgin* did not consider whether the CSRA met this "heightened showing" because the CSRA did "not foreclose all judicial review of petitioners' . . . constitutional challenges to federal statutes." *Elgin*, 132 S.Ct. 2132-33; *see* Def.'s Mem. at 3.

The defendant argues that *Elgin* precludes the plaintiff's claim from being brought in this Court. As explained above, however, the holding *in Elgin* is inapposite because if this Court lacks jurisdiction, then the plaintiff's due process claim will not be "channeled" to another judicial forum but entirely foreclosed. Pl.'s Opp'n at 5-7. Rather, in order to comply with *Elgin*, a heightened showing of Congressional intent to foreclose review must be found in the CSRA before the court may dismiss for want of subject matter jurisdiction. This analysis is required "to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." W*ebster v. Doe*, 486 U.S. at 603 (citations and quotations omitted).[4] Recently, in *Davis v. Billington*, CV 10-00036 (RBW), 2014 WL 2882679, at *5 (D.D.C. June 25, 2014), another Judge on this Court engaged in this

---

[4]The defendant also argues that *United States v. Fausto*, 484 U.S. 439 (1988) and *Manning v. MSPB*, 742 F.2d 1424 (Fed. Cir. 1984), foreclose the plaintiff's claim but both of these cases are inapposite. In *Fausto*, 484 U.S. at 455, the Supreme Court found that the CSRA's exclusion of a class of employees from Chapter 75 of the CSRA, precluded the respondent from bringing a statutory, not, as here, a constitutional, challenge. In *Manning*, the Federal Circuit considered whether the CSRA authorized the MSPB to hear a constitutional and improper transfer claim, which is a wholly separate question from the one presented here whether the CSRA precludes a federal district court from hearing a constitutional claim. *See Manning v. Merit Sys. Prot. Bd.*, 742 F.2d 1424, 1427 (Fed. Cir. 1984) (finding the plaintiff failed to establish jurisdiction because he "failed to point to any statute or regulation granting the MSPB jurisdiction of an improperly motivated assignment[,]" which was not an adverse action under the CSRA). Indeed, the holding in *Manning* that the CSRA avenues for administrative and judicial review are not available for constitutional claims such as the plaintiff's militates in favor of the exercise of jurisdiction here.

necessary analysis, in accordance with *Webster* and *Elgin*, and found that the CSRA does not meet the heightened showing and allowed judicial review of the plaintiff's constitutional claim.

*Davis v. Billington* presented the "quandary" of whether "CSRA's complex remedial scheme completely deprive [sic] individuals in the plaintiff's position" from bringing a constitutional claim that could not be brought under the CSRA. *Davis*, 2014 WL 2882679, at *5. Finding no "language in the CSRA definitively barring the plaintiff's constitutional claims from review by a district court" the Court concluded that subject matter jurisdiction could properly be exercised over the plaintiff's constitutional claim. *Id.* at *6. The holding in *Davis* is consistent with D.C. Circuit's precedent "that the district courts are open to challenges seeking equitable relief on *constitutional* grounds . . . when the CSRA does not provide an adequate alternative route to judicial review." *Suzal v. Dir., U.S. Info. Agency*, 32 F.3d 574, 586 (D.C. Cir. 1994); *see also Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) ("Only in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures can a party come directly to district court."); *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C. Cir. 1988) ("[W]e do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether . . . time and again this [Circuit] has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights") (citations omitted) (collecting cases); *see also Davis v. Billington*, 681 F.3d 377, 388, n.1 (D.C. Cir. 2012) (holding the CSRA precluded *Bivens* remedy but remanding case for district court to consider validity of constitutional claim since plaintiff "can and has filed a claim for injunctive relief for the alleged constitutional violations.").

Accordingly, this Court has subject matter jurisdiction to hear the plaintiff's constitutional due process claim, which cannot be reviewed under the CSRA by the MSBP nor subsequently appealed to the Federal Circuit. *See, e.g.*, *Humberson v. U.S. Attorney's Office for D.C.*, 236 F. Supp. 2d 28, 34 (D.D.C. 2003) *aff'd*, *03*-5073, 2003 WL 21768064 (D.C. Cir. July 16, 2003) (finding jurisdiction to hear plaintiff's constitutional due process claim); *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 70 (D.D.C. 2009) (same).

### B. Motion to Dismiss for Failure to State a Claim

Even if the Court has subject matter jurisdiction, the defendant asserts that dismissal of the plaintiff's claim for failure to state a claim is warranted because the Complaint "unequivocally fails" to meet the requisite pleading standard, under Federal Rule of Civil Procedure 8, as articulated by the Supreme Court in *Iqbal* and *Twombly*. *See* Def.'s Mem. at 9. Specifically, the defendant avers that the plaintiff has not been deprived of a property interest to support a legally cognizable due process claim. *See* Def.'s Mem. at 9-10; Def.'s Reply at 2-4. The Court agrees.

The Fifth Amendment's Due Process Clause requires that the government provide sufficient procedural protections whenever it deprives an individual of property. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). "The first step in assessing any due process claim, therefore, is to ensure that the claimant actually has a cognizable property interest that has been jeopardized by governmental action." *Humberson*, 236 F. Supp. 2d at 30. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Such entitlements emerge from "existing rules or understandings that stem from an independent source such as state law." *Id.*; *see also Cleveland*

9

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). "In the realm of federal employment, protected property interests can arise not only through operation of statute and regulation, but also through agency-fostered policies or understandings and the implicit overall workings [] of a particular government employer." *Kizas v. Webster*, 707 F.2d 524, 539 (D.C. Cir. 1983) (internal quotations and footnotes omitted).

The gravamen of the plaintiff's complaint is that the 2008 Memorandum informing him that his permanent position of record would be moved from HSI to OPR "reflects a mutual understanding between [the plaintiff] and [the defendant] which is an independent source of entitlement creating a protected property entitlement, that is, his interest to be permanently reassigned to the OPR unit." Pl.'s Opp'n at 4. The plaintiff has an uphill struggle to support this claim, conceding, as he must, that "the general rule is that 'no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary.'" *Id.* at 3 (quoting *Anglemeyer v. Hamilton Ctyn. Hosp.* 58 F.3d 533, 536 (10th Cir. 1995). Indeed, as the defendant aptly points out, the "[p]laintiff cites no specific statutory authority provision that grants him tenure as a permanent employee at the Office of Responsibility such that he cannot be reassigned to another permanent position at HSI without a due process hearing." Def.'s Reply at 2. The plaintiff's reliance on the placement of the word "permanent" in the Memorandum falls far short of a binding contract for him to prevail on a claim that his transfer to his original assignment in HIS violated a legally enforceable promise made to him. On the contrary, a fair reading of the 2008 Memorandum does not support the plaintiff's belief that the reassignment of his position to OPR was meant to be permanent. The circumstances of the plaintiff's assignment to OPR, the terms of the 2008 Memorandum itself and strong policy reasons clearly cut against the plaintiff's position.

First, the plaintiff was only assigned to OPR on a temporary basis. The advertisement regarding the OPR position to which the plaintiff responded, as well as the notification to the plaintiff advising him that he had been selected, expressly stated that the assignment to OPR at a higher position level of GS-14 was temporary and could be "terminated any time depending on the needs of the service." Compl. ¶ 3. Moreover, after the temporary assignment to OPR, the plaintiff would "be returned to position held prior to selection." *Id.* Notwithstanding the multiple extensions granted to the plaintiff to remain in OPR, the temporary nature of the assignment to OPR was clear from the outset of his tenure in that DHS component.

Second, the 2008 Memorandum, on which the plaintiff places his primary reliance, states that the plaintiff's "***permanent position of record as Criminal Investigator, GS-1811-13***, will be reassigned from the Office of Investigations to the Office of Professional Responsibility (OPR)." *See* Pl.'s Opp'n, Ex. A. (emphasis added). The plaintiff may have "understood" the reassignment of his "permanent position of record" to be a *permanent* reassignment from HSI to OPR, *see* Pl.'s Opp'n at 5, but that reading misconstrues the language of the Memorandum. The only use of the word "permanent" in the one-page document, as stated above, refers to the plaintiff's position of record as a criminal investigator at a pay grade of GS-13, and the 2008 Memorandum reflects that this permanent position was summarily transferred to OPR, not that the transfer itself was permanent.

Third, the plaintiff appears to rely on the reference in the 2008 Memorandum to the effective date of the reassignment of his G-13 position from HSI to OPR as a basis for his erroneous belief that the assignment to OPR would be permanent. In relevant part, the Memorandum states that "[t]he effective date of this reassignment action will coincide with the effective date of your current temporary assignment with OPR, so that your temporary promotion

11

will not be impacted and to avoid pay interruptions." *See* Pl.'s Opp'n at 2, Ex. A. Again, regardless of the plaintiff's subjective interpretation, the statement does nothing to suggest that DHS would need "just cause" before reassigning the plaintiff's "permanent position" again in the future. In fact, the ability of DHS summarily to reassign the plaintiff's permanent position, as well as control the effective date of such reassignment, indicates that the plaintiff has no right to control such transfers. As the plaintiff has failed to point to a specific statute or contract term to the contrary granting him a property interest in a permanent assignment to OPR, the reassignment of his position from one department of DHS to another cannot be violative of his due process rights.

While the plaintiff may have his own reasons for wanting to remain in OPR as opposed to working in HSI, those reasons do not render "the unilateral reassignment" of the plaintiff's position an "arbitrary and capricious adverse action [that] violates [the plaintiff's] due process rights." Pl.'s Opp'n at 5. As the defendant correctly points out, "[i]f it did, then every federal employee who holds a 'permanent' position could not be involuntarily reassigned, even though there is no loss of grade or pay, to a different permanent position unless a due process hearing was provided." Def.'s Reply at 3. Indeed, this Court has recently articulated the important policy reasons for rejecting the plaintiff's view:

> To hold that plaintiff has a property interest in all aspects of his job, and therefore that due process must be extended whenever any of his specific duties or responsibilities are changed, would essentially convert any personnel decision made by a public employer into a constitutional case. This would deprive employers of the flexibility they need to make staffing decisions and to assign particular tasks to particular employees. It would allow courts to usurp the role of employers in deciding how employees are to be allocated and when workers with particular assets, or particular liabilities, should perform one set of tasks and not others.

*Humberson*, 236 F. Supp. 2d at 33.

In accordance with these policy concerns, courts have routinely rejected claims that a mere reassignment or change of duties, without a corresponding reduction in rank or pay, amounts to a divestment of a property interest. *See id.* at 32-33 ("federal courts have uniformly concluded that a change in a public employee's duties (or, similarly, a lateral transfer) unaccompanied by a reduction in salary is *not* a sufficient deprivation to trigger due process obligations") (collecting cases) (alteration in original); *see, e.g.*, *Anglemyer*, 58 F.3d at 539 (10th Cir. 1995) ("[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary."); *Ferraro v. City of Long Branch*, 23 F.3d 803, 807 (3d Cir. 1994) (finding that change in work assignments did not result in deprivation of constitutionally-protected property interest); *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) ("constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services."); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988) ("Transfers and reassignments have generally not been held to implicate a property interest."); *see also McDonald v. Salazar*, 831 F. Supp. 2d 313, 321 (D.D.C. 2011) *aff'd in relevant part*, 12-5023, 2012 WL 3068440 (D.C. Cir. July 20, 2012) ("Because a mere change in duties does not violate the CSRA, McDonald has not established that the defendants deprived him of a property interest by reassigning him to the Brentwood Auto Shop."). *Cf. Thompson v. District of Columbia*, 530 F.3d 914, 919 (D.C. Cir. 2008) (holding that the plaintiff's transfer triggered a due process violation where the position of reassignment was scheduled for imminent elimination). As the transfer of the plaintiff's permanent position back to HSI implicated no property interest, he was entitled to no additional process, such as a

hearing, before the transfer was made. Accordingly, the plaintiff has failed to state any due process violation that would entitle him to relief.

## IV. CONCLUSION

For the foregoing reasons, although this Court has subject matter jurisdiction over the plaintiff's constitutional challenge to his reassignment within different components of DHS, at the same grade and pay, the plaintiff has failed to establish any legally cognizable property interest that would support his due process claim. Accordingly, the defendant's motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), is granted.

An Order consistent with this Memorandum Opinion will be contemporaneously entered.

Date: August 25, 2014

_____
BERYL A. HOWELL
United States District Judge